IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| T.B., b/n/f/ JENNY BELL § | |
| Plaintiffs § | |
| § | |
| v. § | CIVIL ACTION NO. 4:21-cv-729 |
| § | |
| NORTHWEST INDEPENDENT § | |
| SCHOOL DISTRICT, MARY SELZER § | |
| and LAURA ADAMS, § | |
| Defendants. § | |

**FIRST ORIGINAL COMPLAINT**

T.B. (also referred to as "Student") by and through his next friend and mother, Jenny Bell, (collectively herein "Plaintiffs") files this their *First Original Complaint* alleging that the Northwest Independent School District (hereinafter referred to "NWISD" or the "School District") Mary Selzer and Laura Adams, Individually violated the various rights of T.B. as more specifically pled herein. Plaintiffs reserve the right to replead if new claims and issues arise upon further development of the facts, as permitted by the rules of civil procedure. In support thereof, Plaintiffs would respectfully show this tribunal the following:

**I. BRIEF INTRODUCTION TO THE CASE**

1.  T.B. is a child with a disability. In the spring of 2017, he was verbally and physically abused on numerous occasions by NWISD staff. These acts and omissions of staff, as more fully described below evidence T.B. was a victim of discrimination based upon disability pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C §794 ("Rehab Act") and the Americans With Disabilities Act, 42 U.S.C §12131 et seq. and Chapter 121 of the Texas Human Resources Code by the School District. Additionally, he alleges his rights pursuant

to the 4th Amendment to the United States Constitution were violated by Defendant Adams and to the 14th Amendment by all Defendants.

## II. JURISDICTION

2. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and §1343 because the matters in controversy arise under the Constitution and the laws of the United States.

3. Moreover this Court has supplementary jurisdiction over state and common law claims pursuant 28 U.S.C. §1367.

## III. VENUE

4. Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiff's claims occurred in the Northern District of Texas, Fort Worth Division.

## IV. PARTIES

5. T.B. lives with his mother Jenny Bell at 3701 Grapevine Mills Pkwy; Unit 2623; Grapevine, TX 76051. At all time relevant to this cause they lived within the Northwest Independent School District catchment area.

6. The Northwest Independent School District is a school district organized under the laws of the State of Texas. At all times pertinent to this case, T.B. was a student at the Northwest Independent School District. Based upon reason and belief, Plaintiffs understand the District will be represented by the Honorable Meredith Prykyl Walker, Attorney with the Law Firm of Walsh, Gallegos, Trevino, Russo and Kyle P.C.; 105 Decker Court, Suite 600; Irving, TX 75062.

7. Mary Selzer was a staff member at the NWISD at all pertinent times during this case and

continues to be in the employ of the Defendant School District.

8. Laura Adams was a staff member at the NWISD at all pertinent times during this case. Her current address is unknown but Plaintiffs will make a diligent effort to find her and have her served. Based upon reason and belief, Plaintiffs would understand this Defendant will be represented by the Honorable Meredith Prykyl Walker, Attorney with the Law Firm of Walsh, Gallegos, Trevino, Russo and Kyle P.C.; 105 Decker Court, Suite 600; Irving, TX 75062.

### V.   RELEVANT HISTORICAL AND PROCEDURAL RESUME

9. T.B. first filed a *Request For A Due Process Hearing* with the Texas Education Agency ("TEA") on or about July 11, 2018 which was set at Docket Number 290-SE-0718. It was substantially similar to this *First Original Complaint*. The School District filed a plea asking that all non-IDEA claims, including the then Petitioners' Rehabilitation Act, American With Disabilities Act and Constitutional Claims, all be dismissed as outside the jurisdiction of the Hearing Officer. Additionally, that all claims prior to July 11, 2017 were barred by the operative limitations period. After briefing and argument, the Hearing Officer agreed and dismissed the case. T.B. appealed that decision at 4:18-cv-00985-O which was later affirmed on June 2, 2020.

10. After the case was dismissed by the Hearing Officer, and based upon the School District's representations that the Hearing Officer did not have jurisdiction over those non-IDEA claims noted above, T.B, filed an original action in federal court at 4:18-cv-00984-A on what he thought were those non-IDEA claims. In that cause he argued that the School District and staff violated his rights pursuant to the Section 504 of the Rehabilitation Act of 1973, the

Americans With Disabilities Act or both. Additionally that District Staff violated his constitutional rights. The School District argued these claims should be dismissed because T.B. did not exhaust administrative remedies as contemplated 20 U.S.C. §1415(l). T.B. argued that he had no duty to exhaust administrative claim when he was injured because of the animus of his Special Education Teacher, relying upon Fry v. Napoleon Community Schools, 137 S. Ct. 743, fn. #9; 197 L. Ed. 2d 46 (2017) for this proposition. Nevertheless, the District Court agreed with the School District's position. Accordingly, T.B'.s non-IDEA claims against both parties were dismissed for failure to exhaust administrative remedies pursuant to 20 U.S.C. §1415(l).

11. T.B. appealed this decision to the Fifth Circuit Court of Appeals. He argued, among other things, that he did not have to exhaust injury based claims as contemplated by Fry purportedly because the acts and omissions related to the injury were not based upon a *Free Appropriate Public Education* as contemplated by the IDEA. Nevertheless, he Panel affirmed the District Court's Decision that T.B. had failed to exhaust claims, though there was a strong dissent as to why he did not. That case was dismissed without prejudice on November 23, 2020 at 980 F.3d 1047 (November 23, 2020) giving T.B. both the ability and duty to return to the Texas Education Agency to have the claims the did District argued in an administrative proceeding.

12. Accordingly, on or about January 12, 2021 T.B. filed an *Original Petition* with the Texas Education Agency, requesting that a Hearing Officer to be appointed to address any unexhausted claims. It was set at Docket Number 085-SE-0121. The School District filed a motion asking the Hearing Officer to dismiss the claims for being filed outside the one-year

statute of limitations period contemplated by 19 T.A.C. §89.1151( c). On April 30, 2021 the Hearing Officer dismissed the Special Education case based upon the IDEA with prejudice. In doing so, T.B. finally became free to file this cause of action based upon the acts, omissions and injuries sustained at the hands of the Individual Defendants and the deliberate indifference of the Defendant School District.

## VI. STATEMENT OF FACTS

A.   ABOUT T.B.

13. T.B. was born on March 21, 2006 and is now 15 years old. He has been diagnosed with *Autism Spectrum Disorder*[1] and *Attention Deficit Hyperactivity Disorder* ("ADHD").[2] As such, at all times relevant to this pleading he can be considered a person with a disability.

14. As the facts more fully describe below, these disabilities caused T.B. to be cognitively impaired such that it manifested itself with him having significant behavioral issues that often required him to be removed from class, restrained or secluded.

15. Due to these disabling conditions and cognitive impairments he received Special Education

---

[1]. Autism spectrum, also known as autism spectrum disorder (ASD), is a range of mental disorders of the neurodevelopmental type. It includes autism and Asperger syndrome. Individuals on the spectrum often present with problems with social communication and interaction; and restricted, repetitive patterns of behavior, interests or activities. These include behavioral characteristics with slow development of social and learning skills to difficulties creating connections with other people. Other behavioral characteristics include abnormal responses to sensations including sights, sounds, touch, and smell, and problems keeping a consistent speech rhythm. The latter problem influences an individual's social skills, leading to potential problems in how they are understood by communication partners. Behavioral characteristics displayed by those with autism spectrum disorder typically influence development, language, and social competence. Behavioral characteristics of those with autism spectrum disorder can be observed as perceptual disturbances, disturbances of development rate, relating, speech and language, and motility. https://en.wikipedia.org/wiki/Autism_spectrum

[2]. Attention deficit hyperactivity disorder (ADHD) is a mental disorder of the neurodevelopmental type.[10][11] It is characterized by difficulty paying attention, excessive activity, and behavior without regards to consequences which is not appropriate for a person's age. ADHD will manifest itself in some children with increased impatience, the inability to control themselves, blurting out inappropriate comments, showing their emotions without restraint, and acting without regard for consequences. https://en.wikipedia.org/wiki/Attention_deficit_hyperactivity_disorder

        Services from the School District, as contemplated by the *Individuals With Disabilities Education Act*, 20 U.S.C. 1401 et seq. ("IDEA").

B.    ABOUT NORTHWEST ISD

16.    The School District is a local educational agency, within the meaning of state and federal law. The School District receives, at least in part, federal funding. As such, it must follow the relevant requisites of the Section 504 of the Rehabilitation Act of 1973. It offers public services in a public building and as such must adhere to the requisites of the Americans With Disabilities Act and Chapter 121 of the Texas Human Resources Code. As a *State Actor* both the District and Staff it must also assure at T.B. benefits from all his civil rights as contemplated by the United States Constitution. One such duty under each law is to assure that T.B. is provided all necessary accommodations and modifications to the environment to be assured the environment is safe and non-hostile to him. Additionally, the School District has a duty to assure staff are trained to deal with students like T.B. and has a supervisory structure in place to assure T.B. receives equal access to educational services as compared to his non-disabled peers.

17.    The School District has long had and re-authorized policies and procedures related to *Student Welfare* and keeping students free from Discrimination, Harassment & Retaliation, that address among other things, including teacher upon student harassment and assault. It sets out definitions of harassment and the duties of the Administration to investigate allegations of bullying, harassment and assault by staff upon a student with a disability.

18.    First, it requires all allegations of bullying, harassment or assault based upon a student with a disability by a teacher, whether receiving IDEA services or Section 504 Accommodations

or neither, to be directed to the School District's Section 504 Coordinator. The family must be given that person's contact information and notice of their own procedural rights and safeguards. These procedures include but are not limited to the requirement the District's investigation needed to be completed in a timely manner, usually less than 10 days. Further, that a written report be developed and interim action taken, as appropriate. The report must address whether or not prohibited contact occurred and must be filed with the relevant School District Official. Importantly a copy of the investigation results must given to the family.

19. The School Board Policies also note a non-exhaustive list of potential corrective actions based upon relevant federal and state law and regulations, directives from federal executive agencies like the Office of Civil Rights ("OCR") with the United States Department of Education, and jurisprudence related to discrimination based upon disability. Such actions may include but are not limited to a training program for the victim and perpetrators, a comprehensive education program for the school community and counseling to the victim. There may be reimbursement of out-of-pocket medical and counseling expenses, the provision or reimbursement to the family for social skills training and other items based upon the unique and individualized needs of the student. Importantly, there must be a system in place to follow-up and determine if new incidents had occurred and the effectiveness of interventions that have been provided the student.

20. If a student is not satisfied with the outcome of the investigation, they have the right to appeal the decision through the District's grievance procedure, with the Texas Education Agency ("TEA") or even the Office of Civil Rights ("OCR") with the U.S. Department of Education ("U.S. DOE").

C.  T.B. IS HARASSED BY STAFF

21. On or about February 8, 2017, T.B.'s mother attended a meeting with School Staff including Principal Mary Selzer where his teacher, Laura Adams stated that had observed his Aide, Mr. Kenneth Burt pulling her son out of class and when T.B. returned she observed an increase in his maladaptive behaviors. The School Principal agreed to reassign Burt to another student but afterwards mother learned, again through Adams, that when T.B. was in the lunch room, he was being supervised by Burt.

22. Adams also reported that on one occasion T.B. attempted to get away from Burt and went to what was called a "cool down" or "safe" room. Burt followed T.B. and said "when I get in there, I am going to put you on the floor." Adams followed and observed Burt forcefully grab T.B., twist his arm behind his back, put him against the wall, and push him to the floor, injuring him in the process. Even though the School Principal knew about this incident neither she or anyone else with the NWISD ever contacted T.B.'s mother about another assault by Burt.

23. T.B. was understandably terrified during this sequence of events, so that night he told his mother about this physical assault by Burt. In addition, T.B. told his mother about the ongoing verbal abuse by Burt. He reported that the verbal abuse began when T.B. was put in Burt's classroom in January 2017. For instance, Burt would insult T.B. with phrases including: "You are at a first-grade level . . . ." (T.B. was in fifth-grade at the time and was not at a first-grade level), "You're not normal . . . .", "Do you know what the 'golden-age' is . . . [it] is 12 and by the time you get there, you will be in juvie . . . .", You're nothing like [your sister]—she is far past you . . . ." (T.B.'s sister is a year younger than him), "What do

you want to be when you grow up? . . . I don't need to know because you're not going to make it . . . ." T.B.'s mother immediately sent Ms. Adams an email requesting a phone call as soon as possible. Ms. Adams called T.B.'s mother back that night and told her that she knew exactly why she wanted to speak with her. Adams confirmed T.B.'s recollection of the assault.

24. On February 16, 2017, T.B.'s mother met with Principal Mary Seltzer and Adams. Adams again confirmed T.B.'s recollection of the bullying and harassment at the hands of Burt. Further, that she witnessed another assault of T.B. and there was "no reason" for it because T.B. was not in danger of hurting himself or anyone else at that time.

25. Principal Seltzer stated that NWISD would perform an investigation. T.B.'s mother made repeated requests for a copy of the investigation report. Nevertheless, Seltzer refused to do so. T.B's mother does not believe an investigation ever occurred.

26. At that time T.B.'s mother also asked for copies any training Burt may have received in dealing with her's son's disability, including for instance, *Crisis Prevention Intervention* Training ("CPI"). This information was also withheld from mother.

27. Upon information and belief, NWISD never reprimanded Burt for the bullying and harassment he inflicted upon T.B.

28. Ms. Bell, did again ask Seltzer and others that Burt be removed and they have no further contact. Administrative Staff again agreed to do so but nevertheless, T.B's mother reasonably believes there were other incidents of bullying and harassment that she was never told about.

29. Sadly, after the bullying, harassment and abuse by Burt, exacerbated by the District's failure

to intervene and prevent all, T.B.'s behavior declined dramatically. He began experiencing debilitating anxiety, panic attacks, depression, and anger. In addition, he began having trouble forming relationships with the school staff and others, trouble trusting adults, very low self-esteem and low self-confidence, a fear of failure. In summary, he underwent a drastic change in overall mood and demeanor.

30. For instance, before the incidents, T.B. generally exhibited a positive demeanor but after the harassment by Burt, and being put in the position to not only see Burt daily, but be supervised by Burt, his overall demeanor became more and more hopeless and depressed.

31. At a meeting with Seltzer and other staff to discuss these issues shortly thereafter, T.B.'s mother requested additional counseling for her son. She also requested in-home parent training to her learn how to best deal with the effects of the verbal and physical abuse T.B. experienced. These services were never provided.

D. THE SECOND ROUND OF ASSAULTS AT NORTHWEST ISD

32. On or about April 4, 2017, T.B. called his mother from school to ask her to pick him up. During the call, T.B.'s teacher, Laura Adams, got on the phone and told mother that she was losing her patience with T.B. At some point after that phone call, T.B. stood on top of a table to get away from Adams. In response, Adams knocked him to the ground, dragged him through two classrooms, and climbed on top of him. Then, as T.B. ran back and forth in a complete panic, Adams also kicked him in the chest. He suffered bruising from kick. Additionally, he had bruising on his wrists and hips from being dragged around, as well.

33. Mary Selzer placed T.B. in a chair with his hands handcuffed behind his back for more than

two hours[3]. Selzer also contacted the local juvenile justice authorities to have T.B. brought to the local juvenile detention facility, where he spent the night.

34. That day, T.B. was not provided lunch at school and was not able to eat until that evening while in detention.

35. His mother was able to pick him up the following day. The Judge released T.B. and also entered an order that Adams was not to have contact with him. Further, that T.B. was immediately able to return to school.

36. The incident on April 4, 2017 was captured on video. T.B.'s mother requested a copy of the video. The Principal refused to provide her a copy of the incident. Nor would they permit mother to ever see the entire video.

37. Due to the second round of harassment incidents and the District's actions and inactions the various effects of the abuse T.B. received at the hands of Burt and Adams, significantly worsened. In fact, he underwent a drastic change in overall mood and demeanor.

38. Before the incidents, T.B. primary exhibited a positive demeanor. Afterwards his overall demeanor was as hopeless and depressed.

39. The School District failed to address any of these problems.

E.   THE FAILURES OF THE SCHOOL DISTRICT

40. After the first round of harassment and bullying by Burt, the District never gave T.B.'s mother notice of their procedural and substantive rights under school board policies and procedures. They never provided the family information identifying the School District

---

[3]. On August 28, 2019 in the case of Wilson a/n/f for S.W. v. City of Southlake, No. 18-10342, the 5th Circuit Court of Appeals determined that a student with a disability who is unnecessarily handcuffed by a peace officer has a plausible claim of discrimination based upon disability.

Section 504 Coordinator. Nor did they ever give T.B.'s mother notice of their procedural and substantive rights under *Section 504 of the Rehabilitation Act of 973*, 29 U.S.C. §794.

41. The School District failed to investigate the harassment and bullying by Burt. Upon information and belief, the School District never reported the actual facts and video evidence surrounding the February 15, 2017 and April 4, 2017 assaults and abuse to Child Protective Services (CPS) or to the local police.

42. Upon information and belief, the District never conducted or completed investigations into the assaults and abuse on T.B. and if they did, they never provided T.B.'s mother investigation reports for any of the abuse and assaults to T.B. The District never provided the family information about their right to file a formal grievance with the School Board or about their right to file a formal complaint with the U.S. Department of Education Office of Civil Rights.

43. The District failed to appropriately respond to the abuse and assaults inflicted upon T.B. as described above and failed to remediate their effect on him as required by federal laws and School Board Policies & Procedures intended to protect the civil rights of children with disabilities. The negative effects of the abuse and assaults as described above continued well past the dates of the incidents and to the present.

44. The District never provided any of the remedies required under Section 504, OCR Guidelines, or the NW ISD School Board's own policies and procedures including but not limited to providing and including a psychological assessment; school-based counseling services; an aide or shadow to observe the Student at the school or social skills training.

45. Moreover, the District failed to implement appropriate safety measures to prevent future

assaults and abuse and provide a safe environment for T.B.

46. The School failed to address the impact of the assaults and abuse on and discrimination against T.B.

47. After the second incident by Ms. Adams the School District again failed to provide any of the items they were supposed to provide and address, just as they had failed with allegations about Burt.

48. As a direct result of the School District's acts and omissions, and denials and refusals, it is evident they failed to provide T.B. a safe and non-hostile educational environment to the same extent as his non-disabled peers.

49. In addition, the District failed to provide T.B. the accommodations and modifications he required so that he could to the enjoy equal access to public educational services to same extent as his non-disabled peers.

50. These failures, by each individual Defendant in concert with each act and omission by the School District Defendant, in concert with each other rose to the level of discrimination based upon disability pursuant to the ADA, the Rehab Act and Chapter 121 of the Texas Human Resources. In addition and in the alternative it violated his rights under the 4th and 14th Amendments to the U.S. Constitution.

## VII. STATE ACTION

51. Plaintiffs incorporate by reference all the above-related paragraphs, with the same force and effect as if fully set forth herein. In addition, Plaintiffs incorporate by reference all the below-related paragraphs, to those above them, also with the same force and effect as if fully set forth herein.

52. The School District Defendant and the Individual Defendant in any and all capacities, were acting under color of federal and state law when they subjected the Student to the wrongs and injuries set forth herein.

### VIII.  CLAIMS PURSUANT TO THE UNITED STATES CONSTITUTION

A. UNCONSTITUTIONAL PRACTICES & CUSTOMS

53. In addition and in the alternative to the above, Plaintiffs contend that the School District Defendant failed to provide T.B. competent staff.

54. Further, Plaintiffs contend that Defendant School District failed to sufficiently train and supervise staff, in addressing the needs of this Student, and one with a disability, thereby violating his rights pursuant to the *Due Process Clause* of the Fourteenth Amendment of the Constitution of the United States.

55. Such failures by the School District were a moving force in violating the rights of T.B. for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

B. VIOLATION TO THE RIGHT OF LIFE, LIBERTY AND THE PURSUIT OF HAPPINESS

56. Plaintiffs contend, in addition and in the alternative to the above that the acts and omissions of the Defendant School District in permitting the entire elementary school community to witness T.B.'s mental health breakdown, the subsequent beating by Defendant Adams and the restraint by Selzer thereafter violated his rights pursuant to the Fourteenth Amendment of the Constitution of the United States for which he seeks recovery pursuant to 42 U.S.C. §1983 as such acts and omissions violated his right to life, liberty and the pursuit of happiness, as noted above.

57. Plaintiffs contend, also in addition and in the alternative to the above that the acts and

omissions of the Defendant School District having T.B. unnecessarily and illegally arrested and forcefully detained in a juvenile detention center violated his rights pursuant to the Fourteenth Amendment of the Constitution of the United States for which he seeks recovery pursuant to 42 U.S.C. §1983 as such acts and omissions violated his right to life, liberty and the pursuit of happiness, as noted above.

C. RIGHT TO EQUAL PROTECTION

58. The United States Constitution provides that no state shall deny any person within its jurisdiction the equal protection of the law.

59. The acts and omissions of the Defendant School District, Selzer and Adams evidence he was treated differently than other students similarly situated because of his disabilities. As such, he was a victim of discrimination *as a class-of-one* as contemplated by the *Equal Protection Clause* of the Fourteenth Amendment, for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

D. CLAIMS PURSUANT TO THE 4th AMENDMENT

60. Plaintiffs contend that the acts and omissions of Defendant Selzer and Adams were both an unnecessary restriction on T.B.'s freedom of movement, thus violating his rights pursuant to the Fourth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

61. Additionally Plaintiffs contend that the acts and omissions of Defendants Selzer and Adams were an excessive restriction on T.B.'s freedom of movement, thus violating his rights pursuant to the Fourth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983.

### IX. CLAIMS PURSUANT TO THE AMERICANS WITH DISABILITIES ACT

62. T.B. alleges that the facts as previously denoted above provide a plausible claim he was a victim of discrimination based upon disability, as contemplated by the *Americans with Disabilities Act*, 42 U.S.C. §12131, *et seq.* ("ADA"). First, it is uncontroverted that T.B. is a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2), having emotional and learning disabilities that affect major life functions, including learning, mental health, and socialization with others.

63. It is further uncontroverted that the Northwest Independent School District is a "public entity" as defined in 42 U.S.C. §12131(1). Accordingly, the School District must follow the mandate of the ADA.

64. Plaintiffs allege that the Defendant School District failed and refused to reasonably accommodate and modify the services needed by T.B., based upon his disability, so that he could benefit from public education services to the same extent as his non-disabled peers. Such failures and refusals with the School District caused injuries to T.B.

### X. CLAIMS PURSUANT TO THE REHABILITATION ACT OF 1973

65. Northwest ISD receives federal funds and thus must follow the requisites of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794. Moreover, the implementing regulations of Section 504 require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled student's unique and individualized needs and fails to accommodate that child's disability and keep the student

safe, it violates Section 504.

66. Plaintiffs assert that T.B. is a person with a disability, that he was physically harassed by School District personnel over a significant period of time, that the harassment was severe and pervasive causing T.B.. to experience a loss of educational opportunities, that staff with the ability to have cured the situation were on notice of the problem and failed to respond reasonably under the totality of the circumstances.  In short, because the NWISD has failed to provide T.B. a safe and non-hostile educational environment, they have violated Section 504 and injured him thereby.

### XI. CLAIMS PURSUANT TO THE TEXAS HUMAN RESOURCES CODE

67. Chapter 121 of the Texas Human Resources Code creates duties for public entity like a Public School District to fulfill, when serving the needs of a student with a disability like T.B. in this cause. Those duties generally include the "duty to make reasonable accommodations in policies, practices and procedures." Texas Human Resources Code §121.003(d)(2).

68. If a School District fails to provide a student with a disability covered by this Chapter necessary "reasonable accommodations" it creates a private cause of action for that person, pursuant to Texas Human Resources Code §121.004(b) and the aggrieved may seek damages to remedy such injuries.

69. As the Defendant School District failed to provide T.B. reasonable accommodations and he was injured because of such failures, he seeks damages for mental anguish and other damages pursuant to the Texas Human Resources Code.

### XII. RATIFICATION AND VICARIOUS LIABILITY

70. Northwest ISD ratified the acts, omissions, and customs of school district personnel and staff. As a result, Northwest ISD is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of T.B. because of such ratification.

71. In addition and in the alternative and related to T.B.'s claim of discrimination based upon disability under the ADA and the Texas Human Resources Code, the Defendant School District is liable for the acts and omissions of staff pursuant to the theory of *Respondeat Superior*.

72. Moreover, and also in addition and in the alternative, the School District is liable for the acts and omissions of School District Administrators, including the Elementary School Principal and Vice-Principal pursuant to their own *deliberate indifference.*

### XIII.  PROXIMATE CAUSE

73. Each and every, all and singular of the foregoing acts and omissions, on the part of the NW ISD Defendant Adams, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

### XIV.  SPOLIATION

74. Plaintiffs hereby require and demand that NW ISD preserve and maintain all evidence pertaining to any claim or defense related to the assaults and/or abuse or other violations that make the bases of this complaint and request for due process or the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence regarding the assaults and/or abuse or other violations set forth herein.

75. Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation interference rule—an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

## XV.  DAMAGES

76. As a direct and proximate result of the NW ISD's conduct, T.B. has suffered injuries and damages, for which he is entitled to recover herein including but not limited to:

    a.  Loss of equal educational opportunities as those afforded non-disabled students;

    b.  Physical pain in the past;

    c.  Physical pain in the future;

    d.  Medical expenses in the past;

    e.  Medical expenses in the future;

    f.  Mental anguish in the past;

    g.  Mental anguish in the future;

    h.  Physical impairment in the past;

    i.  Physical impairment in the future; and

77. Various out-of-pocket expenses incurred by his family but for the acts and omissions of NWISD.

## XVI.  ATTORNEY FEES

78. Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth herein.

79. It was necessary for Plaintiffs to retain the undersigned attorneys to file this lawsuit.

80. Upon judgment, Plaintiffs are entitled to an award of attorney fees and expert fees and costs

pursuant to U.S.C. Section 1983, the Rehabilitation Act and the ADA both pursuant to 42 U.S.C. §2000d et seq.

### XVII. DEMAND FOR A JURY TRIAL

81. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all issues in this matter.

### PRAYER

Plaintiffs pray for judgment against the Defendant NW ISD and Adams, jointly and severally in the manner and particulars noted above, and in an amount sufficient to fully compensate them for the elements of damages enumerated above, judgment for damages, recovery of attorneys' fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to, Section 504, the ADA, and 42 U.S.C. §2000d et seq.; together with pre- and post-judgment interest, and court costs expended herein, as well as the equitable issues noted above; and for such other relief as this Court deems just and proper, whether at law or equity or both.

Respectfully submitted,

/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel
State Bar No. 00783829
marty@cirkielaw.com [Email]

Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]

**ATTORNEY FOR PLAINTIFFS**