**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| T.B., b/n/f JENNY BELL, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 4:21-cv-00729-BP** |
| | § | |
| NORTHWEST INDEPENDENT | § | |
| SCHOOL DISTRICT, *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Northwest Independent School District's ("NWISD" or "the District") motion to dismiss with brief and appendix in support (ECF Nos. 5-7); Plaintiff's Response (ECF No. 18); and NWISD's Reply (ECF No. 19). After considering the pleadings and applicable legal authorities, the Court finds the Motion should be and is hereby **DENIED**.

**I.    BACKGROUND**

**A.    Factual Background**

The following facts come from the Complaint, and the Court accepts them as true for purposes of considering NWISD's Motion under Federal Rule of Civil Procedure 12(b)(6). *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002). Plaintiff[1] is T.B., a fifteen-year-old boy whose mother, Jenny Bells, brings this case as next friend. ECF No. 1. T.B. has autism and attention-deficit hyperactivity disorder ("ADHD"). *Id.* at 5. He attends an NWISD school and receives special education and related services under the Individuals with

---

[1] For clarity's sake, the Court uses "Plaintiff" when referencing pleadings, legal claims, and procedural history, but uses "T.B." when referencing the facts underlying Plaintiff's claims. Although his mother brings this case as T.B.'s next friend, the undersigned uses the masculine pronoun "he" when referencing Plaintiff to reflect that T.B.'s interests are being asserted.

Disabilities Education Act ("IDEA"). *Id.* at 5-6. T.B. struggles with "significant behavioral issues that often require[] him to be removed from class, restrained, or secluded." *Id.* at 5. The Complaint alleges T.B. "was verbally and physically abused on numerous occasions by NWISD staff" in Spring 2017. *Id.* at 1. He was eleven at the time.

This alleged abuse occurred over months and included persistent verbal and intermittent physical abuse from special education aide Kenneth Burt; physical assault from T.B.'s teacher, Laura Adams; and improper constraint from his principal, Mary Seltzer. *Id.* at 8-12. As a rough chronology, Burt was assigned as T.B.'s special education aide in January 2017. *Id.* at 8. T.B.'s teacher noticed his "maladaptive behaviors" increased after every time Burt pulled him from class. *Id.* Concerned, she reported her observations to Seltzer, who called a meeting with T.B.'s mother. *Id.* At that meeting and through subsequent talks with T.B., his mother learned Burt was antagonistic toward T.B., verbally harassed him with demeaning language, and was physically violent with T.B. on multiple occasions. *Id.*

Though the District reassigned Burt after the February 8 meeting, he remained T.B.'s direct supervisor at lunch. *Id.* Learning of this, and having heard of additional assaults through T.B. rather than the school, T.B.'s mother met with Seltzer and Adams again on February 16. *Id.* at 9. At the meeting, Seltzer and Adams allegedly verified T.B.'s accounts of the abuse and reported an additional assault that occurred for "no reason," as "T.B. was not in danger of hurting himself or anyone else." *Id.* Seltzer assured T.B.'s mother the situation had been remedied and "NWISD would perform an investigation." *Id.* Plaintiff does not believe NWISD ever investigated and says the District withheld an investigation report despite repeated requests, along with other information relating to Burt and his interactions with T.B. *Id.* at 9-10.

Tensions came to a head on April 4, 2017. That day, T.B. called his mother to pick him up from school, but Adams allegedly took the phone and told T.B.'s mother she was "losing her patience" with him. *Id.* at 10. At some point thereafter, T.B. got on top of a table to flee from Adams, but Adams allegedly "knocked him to the ground, dragged him through two classrooms, and climbed on top of him. Then, as [he] ran back and forth in a complete panic, Adams [] kicked him in the chest." *Id.* Before his mother could get to the school, Seltzer allegedly "placed [him] in a chair with his hands handcuffed behind his back for more than two hours." *Id.* at 10-11. Injured from Adams's kick and bruised from the handcuffs, T.B. was allegedly confined without lunch until law enforcement arrived to transfer him to a juvenile detention center where he was kept overnight. *Id.* at 11. The next day, a judge released T.B. and ordered Adams "not to have contact with him" upon his return to school. *Id.*

This alleged abuse traumatized T.B., triggering further maladaptation to school life. Thereafter, "[h]e began experiencing debilitating anxiety, panic attacks, depression, and anger. In addition, he began having trouble forming relationships with the school staff and others, trouble trusting adults, very low self-esteem[,] and low self-confidence, [and] a fear of failure." *Id.* at 10. "[H]e underwent a drastic change in overall mood and demeanor." *Id.* In response, Plaintiff initiated proceedings that eventually gave rise to this lawsuit. *Id.*

### B.    Procedural Background

Since July 2018, Plaintiff has been involved with five different proceedings regarding varying iterations of the same allegations. ECF No. 6 at 9. Plaintiff was slow to initiate formal proceedings, as the District allegedly "never gave T.B.'s mother notice of their procedural and substantive rights under school board policies and procedures." *Id.* at 11. Furthermore, NWISD allegedly "never provided the family information identifying the School District Section 504

Coordinator [or] . . . notice of their procedural and substantive rights under Section 504 of the Rehabilitation Act." *Id.* at 11-12 (cleaned up). Although the District allegedly hindered Plaintiff's efforts by withholding this and other information regarding their rights and administrative remedies, Plaintiff requested a due process hearing ("DPH") with the Texas Education Agency ("TEA") on July 10, 2018. ECF No. 7-1 at 1. The presiding Special Education Hearing Officer ("SEHO") dismissed Plaintiff's request on September 13, 2018 because Plaintiff's claims were brought outside the applicable statute of limitations. *Id.* at 33. Plaintiff appealed, but this Court affirmed the SEHO's decision on June 2, 2020. ECF No. 1 at 3.

In December 2018, Plaintiff sued Adams and NWISD in this Court under § 504 of the Rehabilitation Act ("RA"), the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983. *See* ECF No. 7-1 at 34-52. The Court dismissed the case for failure to exhaust the IDEA's administrative remedies. *Id.* at 67-85. Plaintiff appealed, but the Fifth Circuit affirmed the dismissal on November 23, 2020. *See T.B. v. Nw. Indep. Sch. Dist.*, 980 F.3d 1047 (5th Cir. 2020) (hereinafter "*T.B. I*"). In January 2021, Plaintiff requested a second DPH, which was dismissed as outside Texas's statute of limitations for IDEA claims. ECF No. 6 at 2. Rather than seeking review of the SEHO's decision in that proceeding, Plaintiff filed this lawsuit on June 8, 2021, asserting claims under the Texas Human Resources Code ("THRC"), RA, ADA, and § 1983. ECF No. 1.

NWISD filed the instant Motion on August 16, 2021, arguing the Court should dismiss Plaintiff's claims for three reasons: (1) Plaintiff failed to exhaust the IDEA's administrative remedies for his RA, ADA, and § 1983 claims; (2) the District is immune from Plaintiff's claims under the THRC; and (3) Plaintiff fails to allege plausible ADA, RA, or § 1983 claims. Plaintiff responded on October 1, 2021. ECF No. 18. The Response dismissed Plaintiff's claims against

Seltzer and Adams, as well as his claims against the District under § 1983, the RA, and the THRC. *Id.* at 6. Thus, what remains is Plaintiff's claim that NWISD violated the ADA.

The District argues Plaintiff's ADA claims repackage his unsuccessful IDEA claim under a different statutory banner—a strategy the Supreme Court denounced in *Fry v. Napoleon Cmty. Schs.*, ___ U.S. ___, 137 S. Ct. 743 (2017). The District argues further that the Fifth Circuit's ruling in *T.B. I*, affirming this Court's dismissal because T.B.'s claims required IDEA exhaustion, forecloses that claim. *See T.B.*, 980 F.3d at 1053. Plaintiff responds that *T.B. I* does not control this case because his current ADA and prior IDEA claims are distinct. *See* ECF No. 18 at 9-10, 14. As Plaintiff sees it, *T.B. I* affirmed his case's dismissal "*without prejudice*, meaning T.B. could seek to exhaust 'what was left.' The clear effect being the [IDEA] claims were barred by limitations, but left open and unaddressed was T.B.'s . . . claim under the Rehab Act. The Panel did not directly address . . . [his] claims under the ADA." *Id.* at 15 (cleaned up). Consequently, Plaintiff argues his ADA claim does not require administrative exhaustion because it seeks a remedy unavailable through the IDEA and does not concern NWISD's special education and related services. *Id.* at 12-21.

## II.    LEGAL AUTHORITIES

### A.    Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). District courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "[T]he basis upon which jurisdiction depends must be alleged affirmatively and

distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citations omitted).

Federal courts have subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and those in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. Absent jurisdiction conferred by statute or the Constitution, district courts lack power to adjudicate claims and must dismiss actions where subject matter jurisdiction is lacking. *Id.*; *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

The Fifth Circuit has held "a complaint based on [the IDEA] is not a justiciable controversy until the plaintiff has exhausted his administrative remedies." *Gardner v. Sch. Bd. Caddo Par.*, 958 F.2d 108, 112 (5th Cir. 1992). This is true wherever IDEA exhaustion is required, even if the Complaint does not explicitly reference the statute. *See McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 648 (5th Cir. 2019) (affirming dismissal for lack of subject matter jurisdiction because plaintiff did not exhaust the IDEA's administrative remedies for his RA and § 1983 claims). Thus, unexhausted cases are properly dismissed for lack of subject matter jurisdiction. *Clinton v. Dall. Indep. Sch. Dist.*, No. 3:17-cv-2981-S, 2019 WL 1411474, at *3 n.3 (N.D. Tex. Mar. 27, 2019) (citing *Hooker v. Dall. Indep. Sch. Dist.*, No. 3:09-cv-1289-D, 2010 WL 4025877, at *6 (N.D. Tex. Oct. 13, 2010)).

**B.      Rule 12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a viable claim, Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). While a complaint does not need detailed factual allegations to

survive Rule 12(b)(6) dismissal, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Rather, the complaint must include enough facts "to raise a right to relief above the speculative level" with the court operating "on the assumption that all the complaint's allegations are true." *Id.*

District courts can grant a 12(b)(6) motion "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)). Thus, when considering a 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim that is plausible on its fact.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### C.      IDEA Administrative Exhaustion Standard

The IDEA offers federal funds to states in exchange for their commitment "to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Fry*, 137 S. Ct. at 748 (discussing 20 U.S.C. § 1412(a)(1)(A)). "As defined in the Act, a FAPE comprises special education and related services," which means "instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit from that instruction." *Id.* at 748-49 (discussing 20 U.S.C. §§ 1401(9), (26), (29); *Bd. of Ed. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S.

176, 203 (1982)). "Relief under the IDEA is limited to a student's right to a FAPE." *Doe v. Dall. Indep. Sch. Dist.*, 941 F.3d 224, 226 (5th Cir. 2019).

Parents must exhaust the IDEA's administrative remedies before suing to assert their child's right to a FAPE. *T.B.*, 980 F.3d at 1051 (discussing 20 U.S.C. § 1415(e)). Plaintiffs suing under similar statutes must also exhaust the IDEA's administrative remedies if they "seek relief that is also available under the IDEA." 20 U.S.C. § 1415(*l*); *see also McMillen*, 939 F.3d at 645. At every step of the process, the IDEA's remedies look to the school's provision of a FAPE:

> The IDEA's administrative procedures . . . center on the Act's FAPE requirement. [A]ny decision by a hearing officer on a request for substantive relief shall be based on a determination of whether the child received a [FAPE]. Suppose that a parent's complaint protest's a school's failure to provide some accommodation for a child with a disability. If that accommodation is needed to fulfill the IDEA's FAPE requirement, the hearing officer must order relief. If it is not, he cannot—even if the dispute is between a child with a disability and the school she attends. There might be good reasons, unrelated to a FAPE, for the school to make the requested accommodation. Indeed, another federal law (like the ADA or [RA]) might *require* the accommodation on one of those alternative grounds. But . . . [the hearing officer's] role, under the IDEA, is to enforce the child's substantive right to a FAPE.

*Fry*, 137 S. Ct. at 754 (citations omitted). Thus, "§ 1415(*l*)'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a [FAPE]. If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(*l*) merely by bringing [the] suit under a statute other than the IDEA." *Id.*

It is not always clear whether a lawsuit challenges a FAPE denial, requiring IDEA exhaustion, or a similar but substantively different right, not requiring exhaustion. "What matters is the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading." *Id.* at 755. To determine a complaint's gravamen, *Fry* offered two helpful hypotheticals: (1) "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library?"; and (2) "could an *adult* at the school—say, an employee or visitor—have pressed essentially the

8

same grievance?" *Id.* at 756. In addition, "prior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term." *Id.* at 757. However, the Court indicated the hypothetical questions may prove more useful than prior invocation of the IDEA's administrative processes, stating "a court may conclude . . . that the move to a courtroom came from a late-acquired awareness that the school had fulfilled its FAPE obligation and that the grievance involves something else entirely." *Id.*

As the Court in *Fry* stressed and the Fifth Circuit has emphasized in subsequent cases, none of *Fry*'s clues are singularly dispositive. *Id.*; *Doe*, 941 F.3d at 226. From the patchwork of clues in *Fry*, the Fifth Circuit has distilled a workable framework for determining a complaint's gravamen: "if a disabled person seeks . . . relief that a non-disabled person could also seek and requests relief that is different from or in addition to a FAPE, the IDEA's exhaustion requirement does not apply." *Doe*, 941 F.3d at 227. The exhaustion requirement "applies only if a plaintiff seeks relief available under the IDEA—not, as a stricter exhaustion statute might, [when] the suit could have sought relief available under the IDEA." *Id.* (citations omitted).

Because a child's Individualized Education Plan ("IEP") is the "centerpiece of the statute's education delivery system," allegations regarding a deficient IEP necessarily implicate a FAPE denial. *Honig v. Doe*, 484 U.S. 305, 311 (1988). The more likely adjustments to an IEP can remedy the wrongs stated in the complaint, the more likely it is the complaint alleges a FAPE denial. *See Fry*, 137 S. Ct. at 758. And if adjustments to an IEP cannot remedy the complaint's wrongs, then it is less likely the complaint alleges a FAPE denial. *Id.* The Court in *Fry* observed that certain grievances are external to a child's IEP. *Id.* at 756 (contrasting a Title VII claim unrelated to an IEP that did not require exhaustion with a Title II claim related to an IEP that did). External

grievances, such as allegations of physical abuse, are "unlikely to involve the adequacy of special education [] and thus unlikely to require exhaustion." *Id.* at 757 & n.9.

### D.   Res Judicata Standard

"[R]es judicata bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999). "[R]es judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion, and (2) collateral estoppel or issue preclusion." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466 (5th Cir. 2013). Collateral estoppel applies if: (1) the issue is "identical to the one involved in the prior litigation"; (2) it was "actually litigated in the prior litigation"; and (3) its determination was "a critical and necessary part of the judgment in that earlier action." *Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir. 1989) (citing *Wehling v. Columbia Broad. Sys.*, 721 F.2d 506, 508 (5th Cir. 1983)). Unlike true res judicata, collateral estoppel does not require a final adjudication on the merits. *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 396 (5th Cir. 2004). Collateral estoppel precludes an issue's relitigation "whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001).

## III.   ANALYSIS

### A.   Plaintiff states a plausible ADA claim.

Plaintiff's claim is not subject to dismissal under Rule 12(b)(6) because the pleadings allege a plausible ADA claim. NWISD argues "Plaintiff's factual allegations do not support a viable ADA claim because his complaint does not identify the accommodations or modifications T.B. needed to benefit from his public education." ECF Nos. 5 at 22; 18 at 9. But plaintiffs need not identify alternative accommodations to allege an ADA claim. To state a claim, Plaintiff must show:

> (1) [T.B.] is a qualified individual with a disability within the meaning of . . . the ADA; (2) [T.B.] was excluded from participation in, or was denied benefits of services, programs, or activities for which the school district is responsible; (3) [T.B.]'s exclusion, denial of benefits, or discrimination was by reason of his disability; and (4) the exclusion, denial of benefits, or discrimination was intentional.

*Harrison v. Klein Indep. Sch. Dist.*, 856 F. App'x 480, 483 (5th Cir. 2021) (citing *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004); *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002)). NWISD would also require Plaintiff to show accommodations that would bring the District into ADA compliance. The law makes no such demand. *Id.*

As for demands the law makes at this stage, Plaintiff's pleadings meet their burden. Plaintiff satisfies the first showing by stating "it is uncontroverted that T.B. is a 'qualified individual with a disability' as defined in 42 U.S.C. § 12131(2), having emotional and learning disabilities that affect major life functions, including learning, mental health, and socialization with others." ECF No. 1 at 16. He satisfies the second showing with a detailed, nine-page recitation of wrongdoings arising from T.B.'s interactions with NWISD personnel. *See id.* at 5-13. He meets the third showing—that the discrimination was "by reason of his disability"—with direct quotes stating as much. *See, e.g.*, *id.* at 8 (recounting Burt's taunts that "You're not normal" and "You're nothing like [your younger sister]—she is far past you" and "What do you want to be when you grow up? . . . I don't need to know because you're not going to make it."), 10 (recounting Adams's statement that she was "losing her patience" with T.B. before she allegedly dragged him through several classrooms and kicked him in the chest). Plaintiff satisfies the fourth showing because the Complaint almost exclusively alleges intentional acts or omissions. The Complaint alleges intentional bullying, *see id.* at 8-9 (Burt bullying T.B.); intentional withholding of information, s*ee id.* (the District hiding information from T.B.'s mother); and conduct that amounts to assault, an intentional tort, *see id.* at 8, 10 (T.B.'s alleged assault by Adams and Burt).

11

At the Rule 12(b)(6) stage, the Court must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious, LLC*, 819 F.3d at 174 (quoting *Twombly*, 550 U.S. at 570). Having read the Complaint in the light most favorable to T.B.'s cause and with an assumption of its truth, it does not "appear[] beyond doubt [T.B.] can prove no set of facts in support of his claim that would entitle him to relief." *Scanlan*, 343 F.3d at 536 (citing *Leffall*, 28 F.3d at 524). Contrarily, if the Complaint's allegations are true, Plaintiff's entitlement to relief seems likely. Thus, his ADA claim cannot be dismissed under Rule 12(b)(6).

**B.     Plaintiff's ADA claim does not require IDEA exhaustion.**

Bearing in mind the Court's admonition in *Fry* not to follow "a 'magic words' approach" that makes IDEA exhaustion "too easy to bypass," *see* 137 S. Ct. at 755, the undersigned focuses on the facts T.B. alleges and sought to avoid overemphasizing any one clue when conducting the gravamen analysis. Having done so, the Court concludes Plaintiff's ADA claim does not require administrative exhaustion.

**1.     The Complaint's gravamen is disability discrimination, not denial of a FAPE.**

"The IDEA is meant to ensure that children with disabilities receive needed special education services." *T.B.*, 980 F.3d at 1051 (discussing 20 U.S.C. § 1400). Consequently, "[r]elief under the IDEA is limited to a student's right to a FAPE." *Doe*, 941 F.3d at 227. The all-important question is whether Plaintiff sues for denial of a FAPE. *See Fry*, 137 S. Ct. at 753 ("The thing a plaintiff must seek in order to trigger § 1415(*l*)'s exhaustion rule [] is relief for the denial of a FAPE."). Here, Plaintiff sues for allegations unrelated to T.B.'s IEP or the District's provision of a FAPE.

While Plaintiff's prior invocation of IDEA remedies weighs against him, the Court in *Fry* discouraged overemphasizing any one factor and encouraged a holistic approach to the analysis. *Id.* at 757-58. The Court acknowledged the limitations of the "prior invocation" clue, noting "the move to a courtroom" could come from "a late-acquired awareness that the school had fulfilled its FAPE obligation and that the grievance involves something else entirely." *Id.* at 757. To start with *Fry*'s strongest clues, the answer to both hypotheticals posed by the Court is affirmative in T.B.'s case. Plaintiff alleges a series of escalating abuses, both verbal and physical, which amounted to "assaults and abuse on and discrimination against T.B." ECF No. 1 at 13. Such allegations would support a claim outside the school context. A disabled child who experienced the same abuse T.B. alleges would have an ADA claim if the conduct of government employees occurred in a public library or theater, as would a disabled adult in T.B.'s school. These affirmative answers provide strong evidence Plaintiff's Complaint is not, in essence, about a FAPE denial. As the Court explained in *Fry*:

> When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward . . . for the FAPE obligations is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

137 S. Ct. at 756.

NWISD insists "Plaintiff's claim under the ADA is FAPE-based." ECF No. 19 at 7. But T.B.'s right to a FAPE does not strip him of rights Congress granted him and other persons under the ADA where the crux of their grievance is disability-based discrimination, not denial of a FAPE. While such discrimination may constitute a FAPE denial, that denial does not preempt their primary concern of discrimination. *See Doe*, 224 F.3d at 227 (holding plaintiff's claims were properly brought under Title VII even though the allegations denied the child a FAPE); *see also*

*Fry*, 137 S. Ct. at 754 ("There might be good reasons, unrelated to a FAPE, for the school to make [an] accommodation. Indeed, another federal law (like the ADA or [RA]) might *require* the accommodation.").

While the sheer number of modern federal statutes makes overlap inevitable, courts consider a statute's plain language when determining the specific legislative end sought by Congress. As the Court in *Fry* advised: "In addressing whether a complaint [is based on denial of a FAPE], a court should attend to the diverse means and ends of the statutes covering persons with disabilities—the IDEA on the one hand, the ADA and [RA] (most notably) on the other." *Id.* at 755. The IDEA exists "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services . . . ." 20 U.S.C. § 1400(d). The ADA exists to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b). Attending to the diverse means and ends of these statutes, a complaint predicated upon allegations of verbal and physical abuse by school personnel against a disabled child, rather than deficiencies in a school's special education and related services, is unlikely to concern a FAPE—even if, as here, the plaintiff initially brought an action under the IDEA.

Because Plaintiff alleges facts that did not concern T.B.'s special education and related services, his ADA claim can proceed without administrative exhaustion. The District's argument that Plaintiff's allegations "sound in FAPE," *see* ECF No. 19 at 6, is tantamount to saying any violation of a special needs student's rights, if it happens at school, is an IDEA issue. But the Fifth Circuit has held this is not the case. In *Doe*, the court did not require administrative exhaustion for a Title VII claim that admittedly denied the plaintiff's FAPE. 941 F.3d at 226. The Court held that "if a disabled person seeks . . . relief that a non-disabled person could also seek and requests relief

14

that is different from or in addition to a FAPE, the IDEA's exhaustion requirement does not apply." *Id.* at 227. If a non-disabled child had been abused by school personnel like T.B. allegedly was, that child would have a colorable cause of action under the ADA. Moreover, even if the District argues Plaintiff seeks remedies available through the IDEA, the Complaint "requests relief that is different from or *in addition to* a FAPE." *Id.* (emphasis added). Accordingly, under *Doe*, the gravamen of Plaintiff's Complaint is not a FAPE denial, and the claim is therefore not subject to IDEA exhaustion.

Another clue regarding the Complaint's gravamen is that a change in T.B.'s IEP would not remedy the abuse he allegedly experienced. As noted in NWISD's 12(b)(6) argument, "Plaintiff does not identify the accommodations or modifications T.B. needed to benefit from his public education." ECF No. 6 at 30. This is because the crux of Plaintiff's Complaint is not T.B.'s loss of a beneficial public education, although his educational benefit was reduced. The absence of recommended alternatives indicates the Complaint does not seek redress for a FAPE denial. Because a child's IEP is the "centerpiece of the [IDEA's] education delivery system," the presence of IEP changes in Plaintiff's Complaint would suggest his allegations concern a FAPE denial. *Honig*, 484 U.S. at 311. Because Plaintiff makes no such suggestions, the Court must presume his allegations do not concern a FAPE denial. This inquiry does not look to the mere presence of words like "FAPE" or "IEP," but rather to the facts alleged. *See Fry*, 137 S. Ct. at 755. In *Fry*, the Court found the plaintiff did not sue for a FAPE denial because:

> The complaint contains no allegation about the denial of a FAPE or about any deficiency in [plaintiff's] IEP. More, it does not accuse the school even in general terms of refusing to provide the educational instruction and services that [plaintiff] needs . . . [T]he Frys instead maintained, just as OCR had earlier found, that the school districts infringed [plaintiff's] right to equal access—even if their actions complied in full with the IDEA's requirements. And nothing in the nature of the Frys' suit suggests any implicit focus on the adequacy of [plaintiff's] education.

*Id.* at 758. The same is true here, as was evident at the July 10, 2018 DPH. *See* ECF No. 7-1 at 5-8 (where Plaintiff told the SEHO Burt's and Adams's actions were "not part of T.B.'s IEP").

As a final matter, NWISD argues Plaintiff's allegations evidence a deficiency in T.B.'s crisis intervention plan ("CIP") and training of NWISD's educational aides. *See* ECF No. 19 at 9 ("T.B.'s argument continues to ignore that the basis of his . . . claim is the alleged failure of Mr. Burt and Ms. Adams to follow T.B.'s IEP and BIP leading up the incidents in February and April 2018."). But that argument proves too much, as any violation of any right whatsoever, if it happens to a special needs child while at school, would violate their IEP or another school policy and show a need for "better training" of school staff. The issue for T.B. is not that a rule or IEP protocol was not followed, but that the alleged discriminatory acts occurred in the first place. Thus, the District's assertion that "failure to implement an IEP and follow a BIP is the epitome of an alleged denial of FAPE" is unavailing. This might be true if NWISD systematically deviated from T.B.'s entire IEP, rendering it functionally meaningless. *Hous. Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000). But typical FAPE-denial claims exist when a plaintiff alleges the IEP itself was deficient, not, as here, when the IEP was satisfactory, but discriminatory acts occurred nonetheless. *Id.*; *see also F.H. ex rel. Hall v. Memphis City Schs.*, 764 F.3d 638, 646 (6th Cir. 2014). Read in the light most favorable to T.B.'s claim, the Complaint's gravamen is disability discrimination, not a FAPE denial.

### 2.  Plaintiff's claim falls within *Fry*'s "physical abuse" exception.

In discussing allegations that could serve as the basis for claims under the IDEA as well as other statutes, the Court in *Fry* opined:

> [S]uppose a teacher, acting out of animus or frustration, strikes a student with a disability, who then sues the school under a statute other than the IDEA. Here too, the suit could be said to relate, in both genesis and effect, to the child's education. But . . . the substance of the plaintiff's claim is unlikely to involve the adequacy of

16

special education—and thus is unlikely to require exhaustion. A telling indicator of that conclusion is that a child could file the same kind of suit against an official at another public facility for inflicting such physical abuse—as could an adult subject to similar treatment by a school official. To be sure, the particular circumstances of such a suit . . . might be pertinent in assessing the reasonableness of the challenged conduct. But even if that is so, the plausibility of bringing other variants of the suit indicates that the gravamen of the plaintiff's complaint does not concern the appropriateness of an educational program.

137 S. Ct. at 756 n.9 (internal citations omitted). Plaintiff's allegations mirror that analysis: the Complaint alleges NWISD personnel became so frustrated with T.B. that they resorted to physical violence even though his behavior posed no risk to teachers or other students. ECF No. 1 at 9. The Court in *Fry* suggested IDEA exhaustion was inapplicable where "a teacher, acting out of animus or frustration, strikes a student with a disability." 137 S. Ct. at 756 n.9. Plaintiff alleges Adams told T.B.'s mother she was "losing her patience with T.B." before she "knocked him to the ground, dragged him through two classrooms, [] climbed on top of him, . . . [and] kicked him in the chest." ECF No. 1 at 10. Thus, in keeping with *Fry*, this case "does not concern the appropriateness of an educational program," such that exhaustion applies. *See* 137 S. Ct. at 756 n.9.

The Court in *Fry* was careful to avoid creating a statutory escape valve for schools being sued under statutes other than the IDEA. *See id.* at 756-57 & n.9. Otherwise, school districts could cast the most egregious discrimination as a "FAPE issue" because it occurred on school grounds. This is a result unthinkable under *Fry* and cases applying its precedent. *Id.*; *see also Doe*, 941 F.3d at 228 ("[Plaintiff's] complaint concerns 'the denial of a nondiscriminatory environment to which *all* students are entitled' . . . Even though the 'same conduct' . . . could give rise to an IDEA claim, . . . Doe's claim regards [] discrimination, irrespective of the IDEA's FAPE obligation. Were all traces of [plaintiff's] disabilities removed, [the] claim would look nearly identical."); *F.H. ex rel. Hall*, 764 F.3d at 644 ("We are not persuaded that Appellants' alleged injuries . . . relate to the provision of a FAPE . . . Appellants allege that [plaintiff] was verbally, physically, and even

17

sexually abused by his aides. These injuries are non-educational in nature and cannot be remedied through the [IDEA's] administrative process."). Accordingly, because T.B.'s allegations mirror the facts contemplated in *Fry* and its progeny, his case does not concern denial of a FAPE and does not require IDEA exhaustion.

### 3. Plaintiff's prior invocation of IDEA remedies is not dispositive of his claim here because the preponderance of other factors weighs against requiring exhaustion.

The District observes that "Plaintiff's First Amended Complaint was almost identical to his request for a special education DPH with one notable difference—Plaintiff scrubbed all references to the IDEA, T.B.'s receipt of a FAPE, and special education terminology." ECF No. 6 at 10. But "don't be fooled!" argues the District; Plaintiff's prior invocation of IDEA remedies dooms his ADA claim here. *Id.* The Fifth Circuit panel in *T.B. I* also noted "T.B.'s resort to the IDEA's administrative procedures before filing suit is a strong indicator that the gravamen of his complaint is in the denial of a FAPE even if the complaint makes no specific mention of a FAPE or the IDEA." *T.B.*, 980 F.3d at 1052. But the Court in *Fry* acknowledged the evidentiary limitations of this clue. *See* 137 S. Ct. at 757; *id.* at 759 (Alito, J., concurring) (calling the consideration "ill-advised" and opining that "[i]t is easy to imagine circumstances under which parents might start down the IDEA road and then change course and file an action under the ADA . . . that seeks relief that the IDEA cannot provide"). Thus, its persuasiveness should be evaluated considering the gravamen analysis as a whole, with particular attention given to the facts underlying Plaintiff's claims and not the labels used to present them. On the facts of the case as presently pleaded, Plaintiff has stated a claim under the ADA notwithstanding the dismissal of his previous claim asserted under an alternative theory of recovery.

**C.      Res judicata does not preclude litigating the IDEA exhaustion issue.**

This case implicates the latter of two preclusive doctrines incorporated in res judicata jurisprudence: issue preclusion, often called collateral estoppel. *See Comer*, 718 F.3d at 466. Collateral estoppel does not preclude litigating the exhaustion issue here because *T.B. I* did not address the issue as it related to Plaintiff's ADA claim. Moreover, to the extent *T.B. I* has a preclusive effect on the issue of administrative exhaustion, it precludes relitigating the issue of whether Plaintiff exhausted IDEA remedies, not whether his ADA claim requires exhaustion.

**1.      *T.B. I* does not satisfy the *Terrell* factors for Plaintiff's ADA claim.**

Collateral estoppel precludes an issue's litigation if (1) the issue at stake is identical to one from an earlier action; (2) the issue was actually litigated in the earlier action; and (3) the issue's determination was necessary for the judgment in that action. *Terrell*, 877 F.2d at 1270. While Plaintiff raised an ADA claim in *T.B. I*, the issue was not actually litigated, thus failing to trigger the second prong in *Terrell*, and by extension failing to trigger prong three. *Id.* The majority opinion does not mention the ADA once. *See T.B.*, 980 F.3d at 1049-54. The dissent mentions it once, but only in a quotation. *Id.* at 1058 (Higginson, J., dissenting) (quoting *Fry*, 137 S. Ct. at 759 (Alito, J., concurring)). A prior case that entirely ignores the applicability of exhaustion for Plaintiff's ADA claim cannot be said to preclude litigation of that issue later. Because collateral estoppel only applies if all *Terrell* factors are met, the doctrine does not preclude litigating exhaustion for Plaintiff's ADA claim.

**2.      *T.B. I* precludes litigating whether Plaintiff exhausted IDEA remedies, not whether IDEA exhaustion is required for Plaintiff's ADA claim.**

The District observed that "Plaintiff's response . . . misunderstands [the District's] argument" regarding preclusion. ECF No. 19 at 6. Plaintiff's response to the District's Motion argued, as analyzed above, that Plaintiff's ADA claim was never actually litigated in *T.B. I*. *See*

ECF No. 18 at 20-21. While true, this only responds to the District's argument in a roundabout

way. It is important to note the absence of Plaintiff's ADA claim from *T.B. I*, thus demonstrating

that *T.B. I* has no preclusive effect on the claim. But the District's argument concerns exhaustion

more generally, untethered to any specific claim. *See* ECF No. 6 at 14. NWISD argues "the Fifth

Circuit's decision [in *T.B. I*] effectively bars the re-litigation of whether T.B. has exhausted his

administrative remedies under the IDEA." ECF No. 19 at 6. The Court agrees. With respect to that

question, *T.B. I* concluded "T.B. failed to exhaust his administrative remedies." 980 F.3d at 1049.

What the Fifth Circuit concluded after full litigation of the issue this Court cannot revisit. That

failure does not change based on the claim presented. *See New Hampshire*, 532 U.S. at 748. But

this case involves a threshold question the Court must ask before considering whether Plaintiff

exhausted IDEA remedies: must Plaintiff exhaust such remedies at all? It does not matter that

Plaintiff failed to exhaust IDEA remedies if he was not required to exhaust them. The court in *T.B.*

*I* actually litigated the former question, but not the latter. The lack of actual litigation on that issue

means *T.B. I* does not preclude its litigation here. *See Terrell*, 877 F.2d at 1270.

The District's reply mistook secondary and primary considerations in this regard. Tracking

the language of *Terrell*, the reply contends:

> [NWISD's] res judicata argument does not concern T.B.'s specific claims; rather,
> it relates to T.B.'s failure to exhaust—an issue identical to the one involved in the
> prior matter, an issue that was actually litigated at the Fifth Circuit, and the
> determination of which was a critical and necessary part of the judgment in that
> earlier action.

ECF No. 19 at 6. But that argument posits that Plaintiff did not exhaust IDEA remedies without

first proving he had to. The District's argument takes this for granted, stating: "It does not matter

what claims Plaintiff attempts to assert, because those claims sound in FAPE, T.B. was required

to exhaust his administrative remedies." *Id.* But the District predicates its argument on an assumed

legal conclusion—that Plaintiff's claims sound in FAPE—without establishing that premise. As noted above, because *T.B. I* did not determine whether Plaintiff's ADA claim "sounds in FAPE," that decision does not preclude litigation of Plaintiff's ADA claim now.

## IV.    CONCLUSION

Plaintiff alleges a plausible ADA claim that survives NWISD's motion to dismiss under Rule 12(b)(6). Plaintiff did not sue NWISD because of a deficiency in its special education and related services, but because members of its staff allegedly discriminated against T.B. due to his disability. While this discrimination may have impacted T.B.'s FAPE, the discrimination was actionable separately because it violated the ADA, not because the same conduct may have denied T.B. a FAPE or deviated from his IEP or CIP. Because Plaintiff sues for something other than a FAPE denial, IDEA exhaustion is not required as a prerequisite for this lawsuit. And because the issue of whether exhaustion applies to T.B.'s ADA claim was never litigated in *T.B. I*, the Fifth Circuit's decision there does not preclude its litigation here. Plaintiff's claim thus survives NWISD's motion to dismiss under Rule 12(b)(1). For these reasons, the Court **DENIES** Defendant Northwest Independent School District's Motion to Dismiss. ECF No. 5.

It is so **ORDERED** on January 25, 2022.


Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE